No. 23-60627

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

BRIAN SCOTT BERRYMAN,
*Petitioner-Appellant,*

*v.*

BRAND HUFFMAN, SUPERINTENDENT,
*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Mississippi
No. 1:22-cv-00140-SA-RP

### RESPONDENT-APPELLEE'S PETITION FOR REHEARING EN BANC

LYNN FITCH
  *Attorney General*
SCOTT G. STEWART
  *Solicitor General*
JUSTIN L. MATHENY
ANTHONY M. SHULTS
  *Deputy Solicitors General*
DANIEL KIM
  *Assistant Solicitor General*
JERROLYN M. OWENS
  *Special Assistant Attorney General*
MISSISSIPPI ATTORNEY
  GENERAL'S OFFICE
P.O. Box 220
Jackson, MS 39205-0220
Telephone: (601) 359-3680
Email: scott.stewart@ago.ms.gov

*Counsel for Respondent-Appellee*

## CERTIFICATE OF INTERESTED PERSONS

Under this Court's Rule 28.2.1, governmental parties need not furnish a certificate of interested persons.

<u>*s/ Scott G. Stewart*</u>
Scott G. Stewart
*Counsel for Respondent-Appellee*

## FED. R. APP. P. 40(b)(2) STATEMENT

A divided panel in this case ordered what may be the most flawed grant of habeas relief in this Court's history. If left to stand, the panel decision will effect a profound miscarriage of justice and threaten the integrity of this Court's habeas law. This Court should grant rehearing en banc to maintain uniformity of decision and address issues of exceptional importance. Fed. R. App. P. 40(b)(2).

The Antiterrorism and Effective Death Penalty Act allows a federal court to grant habeas relief only if a state-court decision defies "clearly established" Supreme Court caselaw. 28 U.S.C. § 2254(d)(1). The state court's decision must be not just wrong, but "so lacking in justification" that the error is "well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Claiming to apply that standard here, the panel ruled that the Supreme Court has clearly established that, when a State violates a defendant's speedy-trial right on one count in an indictment, a trial court must dismiss *every* count in the indictment—including counts for which the State did not violate the defendant's speedy-trial right. The panel deemed the contrary view—of *twelve* other judges in this case, including Judge Ramirez in dissent—to be not just wrong but wrong beyond "fairminded disagreement." Op. 15, 16-17.

The panel decision is manifestly wrong. The Supreme Court has never held that a court must dismiss every count in an indictment when

a State violates a defendant's speedy-trial right on only one count. The Supreme Court has said that dismissal is the required remedy for a speedy-trial *violation*—but it has never ruled that dismissal is required for charges on which there is *no* speedy-trial violation. The Supreme Court has never considered that issue. Those points required rejecting habeas relief: the state courts did not violate any clearly established Supreme Court holding.

The panel decision raises issues of major importance. The decision effects a miscarriage of justice. Petitioner—a convicted murderer—was convicted here of possessing a firearm as a felon after a fair trial on a charge that was free of any speedy-trial violation. There is no basis for disturbing that conviction. In ruling otherwise, the panel "dilute[d]" the "high standard" that AEDPA imposes. Diss. 24. That problem will not be confined to this case: unless rejected en banc, it will infect this Court's AEDPA caselaw.

This Circuit has a strong tradition of enforcing AEDPA—and doing so en banc when necessary. This Court should grant rehearing en banc here to correct an egregiously wrong grant of habeas relief and restore AEDPA's high bar in this Circuit.

*s/ Scott G. Stewart*
Scott G. Stewart
*Counsel for Respondent-Appellee*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ..........................................i

FED. R. APP. P. 40(b)(2) STATEMENT ....................................................ii

TABLE OF AUTHORITIES ...................................................................... v

STATEMENT OF THE ISSUE ................................................................. 1

STATEMENT OF FACTS AND COURSE OF PROCEEDINGS ............. 1

REASONS FOR GRANTING REHEARING EN BANC ......................... 5

    A.    The Panel Manifestly Erred In Granting Habeas Relief Under AEDPA ............................................................................................ 5

    B.    The Panel Decision Raises Questions Of Exceptional Importance ........................................................................... 12

CONCLUSION ....................................................................................... 14

CERTIFICATE OF SERVICE ................................................................ 15

CERTIFICATE OF COMPLIANCE ....................................................... 15

APPENDIX

Panel Decision, *Berryman v. Huffman*, No. 23-60627 (Oct. 16, 2025)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barker v. Wingo,*
    407 U.S. 514 (1972) ........................................................2-4, 6-9, 11, 12

*Berryman v. State,*
    337 So. 3d 1116 (Miss. Ct. App. 2021) .....................................1-4, 8, 9

*Brown v. Davenport,*
    596 U.S. 118 (2022) ................................................................ 13

*Carey v. Musladin,*
    549 U.S. 70 (2006) ............................................................ 5, 6, 9

*Chamberlin v. Fisher,*
    885 F.3d 832 (5th Cir. 2018) (en banc) .......................................5, 13

*Harrington v. Richter,*
    562 U.S. 86 (2011) ..........................................................ii, 5, 9, 10, 12

*Langley v. Prince,*
    926 F.3d 145 (5th Cir. 2019) (en banc) .....................................10, 13

*Lucio v. Lumpkin,*
    987 F.3d 451 (5th Cir. 2021) (en banc) ..........................................13

*Strunk v. United States,*
    412 U.S. 434 (1973) ..............................................................7, 8, 9

*Thaler v. Haynes,*
    559 U.S. 43 (2010) (per curiam) ....................................................13

*United States v. Mann,*
    291 F. Supp. 268 (S.D.N.Y. 1968) ..................................................8

*White v. Woodall,*
    572 U.S. 415 (2014) ............................................................... 8

## Constitutional Provision

U.S. Const. amend. VI .......................................................... 2, 6

## Statute

28 U.S.C. § 2254 ............................................................. ii, 5, 13

## Rule

Fed. R. App. P. 40 ................................................................. ii

## Other Authorities

Edward A. Hartnett,
    Summary Reversals in the Roberts Court,
    38 Cardozo L. Rev. 591 (2016) ........................................... 13

Richard C. Chen,
    Summary Dispositions As Precedent,
    61 Wm. & Mary L. Rev. 691 (2020) ..................................... 13

## STATEMENT OF THE ISSUE

When a State violates a defendant's speedy-trial right on one count in an indictment, does Supreme Court caselaw clearly establish that a trial court must dismiss every count in the indictment—including counts for which the State did not violate the defendant's speedy-trial right?

## STATEMENT OF FACTS AND COURSE OF PROCEEDINGS

Petitioner has been convicted of capital murder, armed robbery, robbery, burglary, and—central here—possessing a firearm as a felon. *Berryman v. State*, 337 So. 3d 1116, 1122 (Miss. Ct. App. 2021).

On February 6, 2017, petitioner agreed to drink moonshine with his neighbor, David Thacker, in Thacker's trailer. 337 So. 3d at 1121. While they were drinking, Thacker asked petitioner to borrow a DVD, petitioner refused, and Thacker punched him. *Ibid.* Petitioner left and soon returned with "[his] .22 rifle and [his] .380 pistol" to "scare" Thacker. *Id.* at 1121-22. When petitioner entered the trailer, Thacker grabbed the rifle and petitioner fired "three or four rounds." *Ibid.* Petitioner then returned home and was soon arrested there. *Ibid.* Police found a rifle, a pistol, and ammunition in petitioner's home. *Id.* at 1121. Petitioner had been on parole from a life sentence for capital murder, but had absconded. *Id.* at 1122. After his arrest, he was returned to state custody and his parole was revoked. *Ibid.*

In September 2017, petitioner was indicted on two charges: shooting into a dwelling and possessing a firearm as a felon. 337 So. 3d

1

at 1122. Trial was delayed—1233 days passed between arrest and trial. *Id.* at 1121-24. Invoking his "right to a speedy ... trial," U.S. Const. amend. VI, petitioner moved to dismiss the case, claiming that a potential defense witness had died while he was awaiting trial. 337 So. 3d at 1124.

The trial court dismissed the shooting-into-a-dwelling count, but not the felon-in-possession count. ROA.755-760. The court applied the "balancing test" for assessing speedy-trial claims announced in *Barker v. Wingo*, 407 U.S. 514 (1972), which "weigh[s]" four factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530; *see* ROA.755-760.

The court ruled that, for both counts, the first three factors favored petitioner: the 40-month delay between the arrest and coming trial was "presumptively prejudicial" (ROA.756); the reasons for delay favored petitioner, but only slightly—the reasons that were the State's fault were not intentional (ROA.756-758); and petitioner "repeatedly asserted his right to a speedy trial" (ROA.758). On prejudice (the "most important" factor): Petitioner faced no prejudice from oppressive pretrial incarceration or anxiety from incarceration because he was going to be imprisoned anyway, for violating his parole. ROA.758. So the only possible prejudice was "impairment of the defense" from the death of the alleged witness, who (petitioner claimed) would have testified that he saw petitioner return to Thacker's trailer without a gun. ROA.758-759. The court reasoned that such testimony could have had "some bearing"

2

on whether petitioner shot into Thacker's trailer. ROA.759. Weighing the four *Barker* factors, the court ruled that the State violated petitioner's speedy-trial right on the shooting-into-a-dwelling charge and dismissed that count. ROA.759-760. But the lost witness's testimony, the court said, could have had "no bearing on whether [petitioner], as a convicted felon, possessed the [rifle] that" police found in his home, and so petitioner could not show "prejudice as to his charge of being a felon in possession of a weapon." ROA.759-760. Because the prejudice factor favored the State and the other factors favored petitioner only slightly, the court ruled that the State did not violate petitioner's speedy-trial right on the felon-in-possession charge and declined to dismiss that charge. ROA.759-760. Petitioner was convicted on that charge. 337 So. 3d at 1126.

The Mississippi Court of Appeals affirmed. 337 So. 3d at 1136. It upheld the trial court's ruling that the State did not violate petitioner's speedy-trial right on the felon-in-possession charge (*id.* at 1126-32) and the trial court's dismissal of only the shooting-into-a-dwelling charge (*id.* at 1133-35). A nine-judge majority rejected a dissenting judge's solo view that *Barker* required dismissing the felon-in-possession charge too. *Barker* says that "dismissal of the indictment" is "the only possible remedy" for a speedy-trial violation. 407 U.S. at 522. According to the dissenting state-court judge here, this "extreme language" required dismissing every charge in petitioner's indictment—even the charge for which there was no speedy-trial violation. 337 So. 3d at 1139-40 & n.16.

Refuting that view, the majority explained that *Barker*, which involved a single count, did "not address[ ] the question whether specific counts could be dismissed" in cases involving multiple charges. *Id.* at 1133. The majority also observed that "neither *Barker* nor any other case" the dissent cited "even considered" whether dismissal was required for counts on which the State did not violate the defendant's speedy-trial right. *Ibid. Barker*'s "only possible remedy" statement, the court concluded, "should not be wrenched from its context and treated as controlling on an issue" that the Supreme Court never "decide[d]." *Ibid.*

After the Supreme Court denied certiorari, a federal district court denied petitioner's habeas petition, ruling that the state appellate court's speedy-trial decision comported with clearly established federal law. ROA.310; *see* ROA.293-323. The district court said that the case was "fairly unusual" because "the trial court found a speedy trial violation as to one count of an indictment rather than to the indictment as a whole." ROA.309. But, the court ruled, a count-by-count approach "ma[de] sense" here and did not violate clear federal law. ROA.310.

A divided panel of this Court reversed and ordered that petitioner be granted habeas relief. Op. 8-17. The panel ruled that Supreme Court caselaw clearly mandates dismissal of the entire indictment whenever "a [speedy-trial] violation has occurred," that "there could be no fairminded disagreement" on whether a complete-dismissal remedy "applies to multi-count indictments as well as single-count indictments," and that

4

the state courts "unreasonabl[y] appli[ed]" federal law by "dismiss[ing] one count" of petitioner's indictment "rather than the [entire] indictment." Op. 11, 15, 17. Judge Ramirez dissented. Diss. 18-25.

## REASONS FOR GRANTING REHEARING EN BANC

### A.    The Panel Manifestly Erred In Granting Habeas Relief Under AEDPA.

The panel manifestly erred in granting habeas relief.

1. Under AEDPA, a federal court may grant habeas relief only when a state-court "decision" "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "[C]learly established" law means "the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006). AEDPA permits relief only when a state court's decision is "so lacking in justification" that the error is "well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Chamberlin v. Fisher*, 885 F.3d 832, 837 (5th Cir. 2018) (en banc).

The state-court decision here does not remotely meet those criteria.

The state-court decision at issue is the Mississippi Court of Appeals' decision upholding the trial court's refusal to dismiss the entire indictment when the State violated petitioner's speedy-trial right on one charge (shooting into a dwelling) but not the other charge (felon in possession). So a federal court could grant habeas relief only if the Supreme Court has "clearly established" that when a State violates a defendant's speedy-trial right on one charge, a court must dismiss every charge in the indictment—including charges for which there is no speedy-trial violation.

The Supreme Court has never held that, said that, or even considered a speedy-trial case where a defendant was denied his speedy-trial right on one charge but not another charge in the same indictment. That reality required affirming the denial of habeas relief: the state appellate court did not violate any clearly established Supreme Court "holding[ ]" in rejecting petitioner's claim. *Musladin*, 549 U.S. at 74. This is not a close case under AEDPA: the writ plainly cannot issue.

2. The panel majority ruled that the Supreme Court has clearly established that when a State violates a defendant's speedy-trial right on one charge, the court must dismiss every charge—including charges for which there is no speedy-trial violation. Op. 11, 14, 15; *see* Op. 14-17. In reaching that decision, the panel did not embrace petitioner's theories that the *Barker* factors cannot be applied count by count or that the Sixth Amendment's text itself compels dismissing all counts always. *See* Supp.

6

Br. 32-40 (CA5 Dkt. 66); State Br. 19-36 (CA5 Dkt. 69). Instead, the panel ruled that Supreme Court caselaw establishes that a court "must dismiss the indictment" entirely whenever "a [speedy-trial] violation has occurred." Op. 11. The panel's reasons for that view are deeply flawed.

First, the panel emphasized that "*Barker* held that the remedy for a speedy trial right violation is dismissal of the indictment—not the count or charge." Op. 15. But *Barker* (like the Court's later speedy-trial decision in *Strunk v. United States*, 412 U.S. 434 (1973)) involved a *single count* and thus did not consider what to do when the State violates the defendant's speedy-trial right on one charge but not another. The latter scenario does not, as the panel majority thought, involve "slightly different facts" (Op. 15): it involves materially different facts. *See* Diss. 23-24. The question whether a violation on one charge requires dismissing another charge for which there is no violation (this case) is not the same as the question whether a violation on the only charge requires dismissing the entire indictment (*Barker* and *Strunk*). *See* Diss. 20 ("neither *Barker* nor *Strunk* confronted the specific question presented by this case") (cleaned up).

Indeed, petitioner conceded that "the Supreme Court's speedy trial cases do not explicitly address the circumstance of a multicount indictment." Supp. Br. 32. That admits that granting habeas relief to petitioner requires extending Supreme Court caselaw. And, as Judge Ramirez explained, that alone dooms petitioner's claim and shows why

the panel erred: "[I]f a habeas court must extend a rationale before it can apply to the facts at hand, then by definition" the court is not applying "clearly established" law, as AEDPA requires. Diss. 21 (quoting *White v. Woodall*, 572 U.S. 415, 426 (2014)); *see* Diss. 20-23.

Second, the panel said that "*Barker* applies to multi-count indictments." Op. 15; *see* Op. 15-16. Of course it does. The state courts did not suggest otherwise: they applied *Barker* to petitioner's claim. ROA.755-760; 337 So. 3d at 1126-35; *see* Op. 12 ("the state court properly identified *Barker* as the relevant authority governing [petitioner's] speedy trial claim"). But the question here is not *whether Barker* applies to multicount indictments but *how* it applies: Does *Barker* require dismissing *every count* in an indictment when some counts are free of a speedy-trial violation? The Supreme Court has never said "yes" to that question—or even considered it. Diss. 18, 20.

*Barker* (and *Strunk*) show at most that dismissal of an entire multicount indictment is proper when there is a speedy-trial violation on *each count*. That was the situation in *United States v. Mann*, 291 F. Supp. 268, 269, 272-73, 275 (S.D.N.Y. 1968), a decision cited in a footnote in *Barker*, 407 U.S. at 533 n.36, on which the panel majority heavily relied. Op. 10, 15; *see* Diss. 22 ("the district court in *Mann* found a speedy trial violation as to *each* of the five counts in the indictment"). But the panel failed to identify any speedy-trial case—let alone a Supreme Court case—even considering how to approach a multicount indictment that included

counts free of a speedy-trial violation. That reality required the panel to reject habeas relief. It is "not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Richter*, 562 U.S. at 101; *see also Musladin*, 549 U.S. at 77 (where a "lack of holdings" shows that the Supreme Court has not adopted a rule of law, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law'").

Third, the panel emphasized "the inflexible nature of the remedy of dismissal" for speedy-trial violations. Op. 16; *see* Op. 16-17. But no one disputes that the only remedy for a speedy-trial *violation* is dismissal, and not some intermediate remedy like a reduced sentence. *See Strunk*, 412 U.S. at 435, 440 (rejecting the latter remedy). Indeed, the state courts here applied the "inflexible ... remedy of dismissal" (Op. 16) to address the violation that petitioner suffered: the trial court dismissed the shooting-into-a-dwelling charge. ROA.759-760; 337 So. 3d at 1134-35. The dispute is over whether dismissal is required on counts for which there is no violation at all. No Supreme Court case holds that a court must dismiss such counts. Diss. 21-22. So the Supreme Court has established no "specific legal rule" governing such circumstances. Diss. 20-21 (emphasis omitted); *cf. Barker*, 407 U.S. at 522 & n.16 (noting that "overzealous application" of the dismissal remedy "would infringe the

societal interest in trying people accused of crime, rather than granting them immunization because of legal error") (cleaned up).

Despite all this, the panel held that the Supreme Court has not only embraced the per se rule that every case involving a speedy-trial violation requires dismissal of all charges, but that the Court has put the matter beyond "fairminded disagreement." Op. 15, 16-17. As Judge Ramirez's dissent shows, that is wrong. Diss. 24-25. *Twelve* judges have rejected the panel's view in this case; before the panel ruled, only one judge had embraced that view. That confirms that—at the least—there is "room for principled judicial disagreement" on this issue. Diss. 24. And that means that petitioner cannot be granted relief under AEDPA. *Richter*, 562 U.S. at 103; *Langley v. Prince*, 926 F.3d 145, 170 (5th Cir. 2019) (en banc) ("the very existence of reasonable disagreement forecloses relief").

3. The flaws in the panel decision go deeper. Far from being wrong "beyond any possibility for fairminded disagreement," *Richter*, 562 U.S. at 103, the state-court decision in this case is *right*. When a State violates a defendant's speedy-trial right on only one charge, it makes no sense to require a court to dismiss every other charge in the indictment. Dismissing only the count infected by a violation fully remedies the defendant's injury without providing a society-damaging windfall.

The implications of its decision should have given the panel majority pause. The decision scraps one charge against one defendant.

But the damage from the panel's always-dismiss-the-entire-indictment rule will not stop there. Consider the implications of that rule:

- Suppose that a State violates the defendant's speedy-trial right on only 1 count in a 30-count indictment. Although the overwhelming majority of the counts are free of any speedy-trial violation, the panel's rule requires dismissing all 30 counts.

- Suppose that a State charged 12 defendants in the same indictment on a mix of charges and the State violated the speedy-trial right of only one defendant on only one count. Although 11 defendants suffered no violation, the panel's rule requires dismissing all counts against all defendants.

- Suppose that the facts were the same as in this case, but instead of one indictment the State used two: one for each charge. Although the speedy-trial violation would be the same, the panel's rule would require dismissing only the shooting-into-a-dwelling indictment—for no better reason than the fact that *Barker* refers to "dismissal of *the indictment.*" 407 U.S. at 522 (emphasis added).

The first and second results are not just wrong but absurd; the third result is right but shows that the panel's rule—which compels a different result on materially identical facts—is absurd.

Despite these glaring problems with an always-dismiss-the-entire-indictment rule, the panel majority never explained why that rule makes sense. The panel instead claimed that one statement in *Barker*—that

"dismissal of the indictment" is "the only possible remedy" for a speedy-trial violation, 407 U.S. at 522—clearly decides the matter. Before that becomes the law of this Circuit, the en banc Court should decide whether the Supreme Court has really "clearly established" that astonishing view.

## B.    The Panel Decision Raises Questions Of Exceptional Importance.

The panel decision raises issues of major importance that warrant the full Court's consideration.

First, the panel decision effects a miscarriage of justice. Petitioner—a capital murderer who absconded from parole and possessed a firearm despite being a felon—was convicted after a fair trial on a charge that was free of any speedy-trial violation. In scrapping that conviction, the panel "frustrate[d]" the State's "sovereign power" to enforce criminal law, "disturb[ed]" its "significant interest in repose for concluded litigation," and stripped from the State and its people "the right to punish" an egregious career offender. *Richter*, 562 U.S. at 103.

Second, the panel decision risks profound negative ramifications for this Court's AEDPA caselaw. The panel majority's view of "clearly established" Supreme Court law "dilute[s]" the "high standard" that AEDPA imposes for habeas relief. Diss. 24. That view will not be confined to this case. Unless the en banc Court rejects the panel's view, enterprising habeas counsel will capitalize and drag AEDPA's bar down lower. It is no accident that the Supreme Court has reversed—indeed,

summarily reversed—so many errant grants of habeas relief under 28 U.S.C. § 2254(d). *E.g.*, *Thaler v. Haynes*, 559 U.S. 43, 44 (2010) (per curiam) (summarily reversing after observing that "allow[ing]" a flawed habeas grant "to stand" "would have important implications"); *see*, *e.g.*, Edward A. Hartnett, Summary Reversals in the Roberts Court, 38 Cardozo L. Rev. 591, 594-95 & n.18 (2016) (collecting summary reversals in habeas cases from 2005-2016); Richard C. Chen, Summary Dispositions As Precedent, 61 Wm. & Mary L. Rev. 691, 706-08 & nn.74, 81, 84-88 (2020) (from 2005-2019, States prevailed in nearly all summary-reversal cases involving "the merits of [a] habeas claim"). Habeas relief is "reserved for only extreme malfunctions in the state criminal justice system." *Brown v. Davenport*, 596 U.S. 118, 133 (2022) (cleaned up). Granting that relief in other circumstances undercuts the integrity of AEDPA's exacting regime and plagues the administration of section 2254(d) across the board.

This Circuit has a strong tradition of rigorously enforcing AEDPA and applying Supreme Court caselaw doing the same. This Court has accordingly gone en banc to reject decisions that wrongly granted habeas relief. *See Lucio v. Lumpkin*, 987 F.3d 451 (5th Cir.) (en banc), *cert. denied*, 142 S. Ct. 404 (2021); *Langley*, 926 F.3d 145, *cert. denied*, 140 S. Ct. 2676 (2020); *Chamberlin*, 885 F.3d 832, *cert. denied*, 139 S. Ct. 2773 (2019). The Court should do so here to correct a deeply flawed grant of habeas relief and restore AEDPA's high bar in this Circuit.

## CONCLUSION

This Court should grant rehearing en banc.

Respectfully submitted,

LYNN FITCH
  *Attorney General*

*s/ Scott G. Stewart*

SCOTT G. STEWART
  *Solicitor General*
JUSTIN L. MATHENY
ANTHONY M. SHULTS
  *Deputy Solicitors General*
DANIEL KIM
  *Assistant Solicitor General*
JERROLYN M. OWENS
  *Special Assistant Attorney General*
MISSISSIPPI ATTORNEY
  GENERAL'S OFFICE
P.O. Box 220
Jackson, MS 39205-0220
Telephone: (601) 359-3680
Email: scott.stewart@ago.ms.gov

*Counsel for Respondent-Appellee*

October 30, 2025

## CERTIFICATE OF SERVICE

I, Scott G. Stewart, hereby certify that this brief has been filed with the Clerk of Court using the Court's electronic filing system.

I have also mailed, via United States Postal Service, first-class postage prepaid, a true and correct copy of the brief to the following:

Brian Scott Berryman, #44499
South Mississippi Correctional Facility
22689 Highway 63, N.
P.O. Box 1419
Leakesville, MS 39451

Dated: October 30, 2025

*s/ Scott G. Stewart*
Scott G. Stewart
*Counsel for Respondent-Appellee*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limitations of Fed. R. App. P. 40(d)(3)(A) because it contains 3605 words, excluding parts exempted by Fed. R. App. P. 32. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because its text has been prepared in proportionally spaced typeface, including serifs, using Microsoft Word 2016, in Century Schoolbook 14-point font.

Dated: October 30, 2025

*s/ Scott G. Stewart*
Scott G. Stewart
*Counsel for Respondent-Appellee*

# APPENDIX

*Berryman v. Huffman*, No. 23-60627 (Oct. 16, 2025)

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 16, 2025

Lyle W. Cayce
Clerk

No. 23-60627

Brian Scott Berryman,

*Petitioner—Appellant,*

*versus*

Brand Huffman, *Superintendent,*

*Respondent—Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:22-CV-140

_____

Before Wiener, Douglas, and Ramirez, *Circuit Judges.*

Dana M. Douglas, *Circuit Judge*:

Petitioner-Appellant Brian Scott Berryman awaited trial while incarcerated for 1,233 days after his arrest. During that time, a witness who would have testified on his behalf died. In adjudicating Berryman's motion to dismiss the indictment premised on the denial of his Sixth Amendment right to a speedy trial, the state court applied the fourth factor of the *Barker* test—prejudice—separately to both counts of Berryman's two-count indictment. Finding that Berryman had been denied a speedy trial as to one count but not the other, the state court dismissed only that count. After an unsuccessful direct appeal, Berryman filed a 28 U.S.C. § 2254 habeas

No. 23-60627

petition. The district court denied his petition but granted a certificate of appealability regarding the remedy for a speedy trial violation in a multi-count indictment. We REVERSE the denial of habeas relief and REMAND with directions to issue the writ.

I

A

On February 6, 2017, David Thacker called law enforcement in Tishomingo County, Mississippi, and reported that his neighbor, Berryman, had entered Thacker's trailer and fired a gun into his bedroom. Officers took statements from Thacker and his girlfriend, Tina Alexander, in which both Thacker and Alexander identified Berryman as the shooter. Officers further recovered eight spent shell casings from a .22-caliber gun and one live .22-caliber round. They also observed bullet holes in the bedroom door and wall.

Officers then proceeded two houses down the street, where they found Berryman with a bruised and bloodied face. Berryman claimed Thacker physically attacked him and stated that he did not have any guns in his house but consented to a home search. The search revealed two firearms (a .380-caliber pistol and a .22-caliber rifle), a box of .22-caliber ammunition, a box containing both .22-caliber and .380-caliber ammunition, hydrocodone, and oxycodone.

Berryman was arrested and taken to the Tishomingo County Sheriff's Office where he agreed to speak with an investigator after being advised of his *Miranda* rights. The signed written statement that resulted from this conversation explained that Berryman, Thacker, and Alexander had been drinking moonshine at Thacker's trailer when Thacker asked to borrow a DVD from Berryman, which Berryman refused. Thacker then struck Berryman in the face "about three times." According to the statement,

No. 23-60627

Berryman "grabbed [his] .22 rifle and [his] .380 pistol and drove over to [the] trailer" to "scare" Thacker by shooting his rifle "three or four" times in Thacker's bedroom.

At the time of his arrest, Berryman was in violation of his parole from a life sentence for a 2009 conviction for capital murder with an outstanding warrant for his arrest. As a result of his 2017 arrest, his parole was revoked, and he remained in the state's custody until trial.

B

Berryman's trial would not take place for 1,233 days—the result of a series of delays that the Tishomingo Country trial court dubbed a "comedy of issues."

Although Berryman was arrested in February of 2017, he was not indicted until approximately seven months later. On September 22, 2017, a grand jury indicted Berryman for violation of two offenses under Mississippi law: (1) shooting into a dwelling ("Count I") and (2) possession of a firearm subsequent to sustaining a felony conviction ("Count II"). Regarding Count II, the only firearm identified in the indictment was a "Marlin .22 Rifle."

Berryman would not be arraigned for another fourteen months after his indictment—on November 7, 2018—because his name was "negligently" left off the arraignment list. Marshall Edge, a witness expected to testify in Berryman's defense, died during this delay. It was also during this delay that Berryman filed two pro se motions seeking appointment of counsel and dismissal based on the denial of his right to a speedy trial At Berryman's arraignment, he was also appointed counsel, but the attorney appointed to represent him was disqualified because he had been elected to the circuit court without opposition the previous day. The arraignment order stated that the case was "continued on motion of the Defendant and set for trial during the next regularly scheduled term." On

No. 23-60627

November 21, 2018, Berryman filed a third pro se motion requesting a trial, dismissal of the indictment, and appointment of counsel.

On January 7, 2019, the court appointed Berryman a second attorney. But the order was never filed due to a clerical error, so Berryman was never informed of this appointment. Further, the second attorney also had a conflict because he was the district attorney who previously prosecuted Berryman for capital murder. The second attorney informed a third attorney that he would need to take over as Berryman's counsel. Berryman, however, was not informed.

Berryman filed his fourth pro se motion for a speedy trial on April 18, 2019. On June 21, 2019, the court entered a continuance order signed by the third attorney, purportedly on behalf of Berryman, but "without [his] consent." Berryman tried to appeal the continuance, but the appeal was dismissed for lack of an appealable final judgment. In October 2019, Berryman filed another pro se motion seeking dismissal on grounds that his right to a speedy trial had been violated.

Between September 2019 to April 2020, the assigned trial judge was unavailable, and a second trial judge entered an order that cancelled the January 2020 term of court for Tishomingo County. Berryman filed a motion requesting that the second judge to recuse himself since he had previously prosecuted Berryman for robbery. The motion was granted.

A third trial judge ruled on some of Berryman's pro se motions, including the appointment of counsel on March 16, 2020. Because Berryman had been provided appointed counsel "since his arraignment" but there was no actual order on record, the judge entered an order appointing the third attorney nunc pro tunc. In April 2020, Berryman filed a mandamus petition requesting that the Mississippi Supreme Court order the trial court to rule on his October 2019 motion to dismiss. The trial court set a hearing for the

No. 23-60627

motion, and the Mississippi Supreme Court dismissed the mandamus petition. Days before the hearing, the trial court appointed Berryman a fourth attorney, as the third attorney was elected to the Mississippi Senate.

At the motion to dismiss hearing, Berryman alleged that his right to a speedy trial had been violated given the various continuances and highlighted that he had lost a defense witness in the process. Berryman submitted Edge's obituary and stated that a neighbor claimed Edge intended to testify that Berryman did not have a gun when he walked to Thacker's trailer the second time. Berryman further asserted that the signatures on the waiver of rights and written statement, which the State claimed he had signed, were not his signatures and misspelled his name as "Bryan" instead of "Brian."

The state court analyzed Berryman's speedy trial claim under the balancing test set forth in *Barker v. Wingo*, 407 U.S. 514 (1972). After treating the first three *Barker* factors as one analysis for all counts, the court evaluated the fourth *Barker* factor—prejudice—separately for each count of the indictment. Specifically, the state court evaluated the relevance of Edge's potential testimony for Berryman's defense for each count in the indictment. Finding that there had been a speedy trial violation for Count I, but not for Count II, the court dismissed only Count I of the indictment.

At trial, the government relied on the signed written statement, but Berryman told a completely different version of the events. Berryman alleged the original conflict stemmed from Thacker asking him for money to purchase drugs, which he refused. But when Alexander privately offered him sexual favors if he gave Thacker the money, he agreed. Berryman alleged Thacker caught him with Alexander and fired his rifle at him after threatening his life. Berryman claimed he fought and took the rifle from Thacker out of necessity and hid it, but Thacker followed Berryman and fired a pistol at him. Additionally, Berryman testified that he did not sign the

No. 23-60627

contradictory written statement, given that it appears that his name is misspelled.

The jury found Berryman guilty, rejecting his necessity defense. The court sentenced him as a violent habitual offender to life imprisonment with no eligibility for parole.

On direct appeal, Berryman contended that Count II of the indictment should have been dismissed alongside Count I given the acknowledged violation of his right to a speedy trial. But the Mississippi Court of Appeals affirmed. *Berryman v. State*, 337 So. 3d 1116 (Miss. Ct. App. 2021). The court held that because Berryman's speedy trial right had been impaired as to Count I only, the trial court was correct to dismiss only that count considering the ad hoc balancing process mandated by *Barker*. *Id.* at 1134.

Judge McCarty dissented. The speedy trial right, he urged, did not allow the state court to conduct a count-by-count analysis of the speedy trial violation or dispense the remedy in a similarly piece-meal fashion. *Id.* at 1139–42. In Judge McCarty's view, there is a singular remedy when there is a speedy trial violation—dismissal of the indictment. *Id.* at 1139 (McCarty, J., dissenting) (citing *Barker*, 407 U.S. at 522). To do otherwise, even when a defendant is charged in a multi-count indictment, is to "craft[] an 'intermediate remedy' of carving off one charge from multiple." *Id.* at 1140–41.

Berryman appealed to the Mississippi Supreme Court and the United States Supreme Court but both requests were denied.

## C

On September 28, 2022, Berryman filed a petition for habeas corpus under 28 U.S.C. § 2254 in the Northern District of Mississippi, asserting

No. 23-60627

several grounds for relief, including that the state court's conclusion that there was a speedy trial violation warrants dismissal of the entire indictment and holding otherwise was an unreasonable application of federal law. The district court denied the petition. However, the district court granted a certificate of appealability ("COA") on the issue of "whether a finding of a speedy trial violation requires dismissal of an indictment in whole or whether the *Barker* analysis may be conducted as to each charge separately, possibly resulting in a finding of a violation as to one charge, but not others."

Berryman timely appealed.

## II

Because the Court of Appeals of Mississippi rejected Berryman's claims on the merits, we can only grant federal habeas relief if that court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Andrew v. White*, 145 S. Ct. 75, 80 (2025) (per curiam). Berryman seeks habeas relief using the first route.

Section 2254(d)(1) "is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citation modified). It is the petitioner's burden to demonstrate entitlement to relief. *See id.* While we are deferential to the state court's application of clearly established federal law, we review de novo

No. 23-60627

a district court's application of § 2254(d)(1). *Williams v. Thaler*, 684 F.3d 597, 603 (5th Cir. 2012).

In the context of § 2254(d)(1), "clearly established federal law" consists of the "governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Poree v. Collins*, 866 F.3d 235, 246 (5th Cir. 2017) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003)). The Court has explained that this "refers to the holdings, as opposed to the dicta," of its decisions. *Carey v. Musladin*, 549 U.S. 70, 74 (2006).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) hold "independent meaning." *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); *accord Dorsey v. Stevens*, 720 F.3d 309, 314 (5th Cir. 2013). Whereas a state court renders a decision "contrary to" clearly established federal law when it "applies a rule different from the governing law set forth in [Supreme Court] cases, or . . . decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts," a state court's decision constitutes an "unreasonable application" of clearly established federal law when it "correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

III

A

We begin by identifying the relevant clearly established federal law at the time of the Mississippi appellate court's decision. *See Poree*, 866 F.3d at 246. Citing *Barker v. Wingo*, and *Strunk v. United States*, Berryman argues that it was clearly established that a speedy trial violation compels dismissal of the entire indictment.

No. 23-60627

In *Barker*, the petitioner was not tried for murder until more than five years after his arrest, during which time the prosecution obtained just shy of twenty continuances for reasons that ranged from the prosecution's interest in trying Barker's alleged accomplice first, to the illness of a key prosecution witness. 407 U.S. at 517–19. Barker, however, did not lodge his first objection to these continuances until over three years after his arrest. *Id.* at 517–18. When he was finally tried, he was convicted and sentenced to life in prison. *Id.* at 518. Barker appealed his conviction to the state court of appeals, asserting, inter alia, a speedy trial violation. *Id.* Following that court's affirmance, he petitioned for habeas corpus relief in federal court. *Id.* The district court rejected the petition, and the Sixth Circuit affirmed. *Id.* The Sixth Circuit concluded that Barker had waived his right to a speedy trial for the period prior to his objection. The court further held that he had not been prejudiced by the delay for the period between his first objection and trial, as that period of time was not unduly long, and the illness of a key witness was a valid justification for delay. *Id.* at 518–19.

The Supreme Court granted certiorari in *Barker* to define the criteria by which courts should determine whether a speedy trial violation occurred. *Id.* at 516. The parties each offered some variation of an inflexible waiver rule that placed the onus on either the prosecution to offer, or the defendant to demand, a speedy trial. *See id.* at 523–24. Recognizing that the speedy trial right is different from other constitutional rights, particularly as it concerns courts' ability to discern precisely when the right has been denied, the Court rejected both rigid proposals. *See id.* at 522–29. Instead, it held that the "slippery" nature of the speedy trial right means that "any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case." *Id.* at 522 (citing *Beavers v. Haubert*, 198 U.S. 77 (1905)).

No. 23-60627

Thus, the Court announced a four-factor balancing test for assessing speedy trial violations that weighs the conduct of both the prosecution and the defendant with regard to: (1) the length of delay, (2) the government's reason for delay, (3) the defendant's responsibility to assert his right, and (4) prejudice to the defendant. *Id.* at 530–32. Prejudice, the Court held, must be assessed with due consideration of the interests that the speedy trial right was designed to protect—preventing oppressive pretrial incarceration, minimizing anxiety of the accused, and limiting the possibility that the defense will be impaired. *Id.* at 532. Still, the Court emphasized that no factor was "talismanic" in this difficult balancing process. *Id.* at 533. It then directed courts seeking to apply its holding to consult *United States v. Mann*, 291 F. Supp. 268, 269, 275 (S.D.N.Y. 1968). *See Barker*, 407 U.S. at 533 n.36. There, a defendant charged in a five-count indictment was not set to be tried until nine years after he was indicted. *Mann*, 291 F. Supp. at 269. Prior to trial, the defendant moved to dismiss the indictment on the basis that he was deprived of his right to a speedy trial. *Id.* The district court, applying Second Circuit precedent, weighed four slightly different factors to determine whether the defendant's speedy trial right had been violated.[1] Upon finding a speedy trial violation, the court dismissed the indictment. *Id.* at 275.

While *Barker* prescribed a functional lens to determine the existence of a speedy trial violation, it explained that "[t]he amorphous quality of the right also leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived." *Barker*, 407 U.S. at 522. Comparing dismissal to the exclusionary rule or reversal for a new trial, the

---

[1] At the time of the *Mann* decision, the Second Circuit instructed courts to consider "the length of delay, the reason for delay, the prejudice to the defendant, and waiver by the defendant." 291 F. Supp. at 269–70 (citation modified).

No. 23-60627

Court acknowledged its severity but maintained that "it is the only possible remedy." *Id.*

The Court reiterated the inflexibility of the dismissal remedy in *Strunk v. United States*, 412 U.S. 434 (1973). There, none disputed that the defendant's speedy trial right had been violated. *Id.* at 435. But the Seventh Circuit declined to dismiss the indictment because the defendant did not challenge the sufficiency of the evidence or assert any prejudice in presenting his defense. *Id.* at 438. Instead, the court provided a "practical remedy" by remanding the case with instructions to reduce the defendant's sentence by the period of the unconstitutional delay. *Id.* The Supreme Court reversed. Although it agreed with the Seventh Circuit that *Barker* requires flexibility and practicality, the Court held "that aspect of the holding in *Barker* was directed at the process of determining whether a denial of speedy trial had occurred; it did not deal with the remedy for denial of this right." *Id.* Given that Strunk's right to a speedy trial was violated, the Seventh Circuit was not at liberty to fashion "less drastic" relief. *Id.* Instead, "dismissal . . . remain[ed], as *Barker* noted, 'the only possible remedy.'" *Id.* at 440 (quoting *Barker*, 407 U.S. at 522). As explicated by the Supreme Court in *Strunk*, *Barker* requires that, upon finding a speedy trial right violation, the indictment must be dismissed.

From *Barker* and *Strunk,* we deduce that when it comes to the speedy trial right, courts must engage in a fact-intensive balancing test that reflects the nebulous nature of the right to determine whether it is has been violated. *See Barker*, 407 U.S. at 521–22. But once it is determined that a violation has occurred, courts have no choice of remedy and must dismiss the indictment. *See Strunk*, 412 U.S. at 440; *Barker*, 407 U.S. at 522.

No. 23-60627

B

Berryman's request for habeas relief centers on the state court's application of the clearly established law governing the remedy for a speedy trial right violation. He argues that the decision to dismiss one count, rather than the indictment, is directly contrary to the principle that courts may not craft tailored remedies for a speedy trial right violation. Alternatively, he contends that the state court's failure to dismiss the indictment was an unreasonable application of *Barker*.

Because the state court properly identified *Barker* as the relevant authority governing Berryman's speedy trial claim, our focus is limited to the objective reasonableness of the court's application of *Barker* to Berryman's case. *See Boyer v. Vannoy*, 863 F.3d 428, 442 (5th Cir. 2017). Unlike other cases in which the petitioner has challenged the state court's weighing of the *Barker* factors to discern whether there was a speedy trial right deprivation, Berryman challenges the remedy provided by the state court. *cf. Goodrum v. Quarterman*, 547 F.3d 249, 257 (5th Cir. 2008); *Boyer*, 863 F.3d at 442. Accordingly, we forego evaluation of the state court's analysis of the *Barker* factors and consider only the reasonableness of its application of the dismissal remedy.

The Court of Appeals of Mississippi determined that, despite *Barker*'s holding that "dismissal of the indictment" is the "only possible remedy," the state trial court's dismissal of only one count was proper because *Barker* "never used the phrase 'the entire indictment,'" nor did it consider multi-count indictments. *Berryman*, 337 So. 3d at 1133. The court further determined that dismissal count-by-count was consistent with *Barker*'s instruction that the speedy trial right be assessed on an ad hoc basis. *Id.* at 1133–34. When a defendant has not been deprived of his speedy trial

No. 23-60627

right to a particular count, the court concluded there was no legal basis to grant the remedy of dismissal. *Id.* at 1134.

As an initial matter, the parties seemingly dispute the relevant standard by which Berryman's argument under the "unreasonable application" prong must be assessed. In his opening brief, Berryman asserted that the state court "unreasonably refused to extend *Barker* and its progeny to the multicount indictment context." Citing our decision in *Lucio v. Lumpkin*, 987 F.3d 451, 486 (5th Cir. 2021) (en banc), the State argues that the Supreme Court has rejected the proposition that § 2254(d)(1) permits relief based on a state court's unreasonable failure to extend a clearly established rule. Berryman replies that the Supreme Court only disabused this standard to the extent that it differs from the principle that a state court unreasonably applies a governing legal rule when it applies the rule unreasonably to the facts of a petitioner's case.

In *White v. Woodall*, 572 U.S. 415, 426 (2014), the Supreme Court squarely rejected the proposition that a federal habeas court may fault a state court for failing to extend a legal rule. Rather, the Court held that "'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)). At the same time, the Court acknowledged that § 2254(d)(1) does not bar relief under the "unreasonable application" clause merely because a petitioner's facts are not identical to those of the governing Supreme Court caselaw. *Id.* at 427. For certain "fundamental" principles, "when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt." *Id.* (citation modified). Under these circumstances, a state court's decision constitutes an "unreasonable application" if the application of the rule is beyond "fairminded disagreement." *Id.* (citation modified). The possibility of fairminded disagreement turns on the

No. 23-60627

specificity of the rule to be applied.  As the Court explained in *Yarborough v. Alvarado*:

> If a legal rule is specific, . . . [a]pplications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

541 U.S. at 664 (citation modified).

Pursuant to this standard, and the principles established by *Barker* and *Strunk*, we conclude that Berryman is entitled to relief.  The parties do not dispute that Berryman was denied his right to a speedy trial, at least with regard to Count I of the indictment.  Consequently, any remedy short of dismissal of the indictment contravenes the Supreme Court's holdings which require the unyielding and severe remedy of dismissal of the indictment upon finding a speedy trial right violation.  *See Strunk*, 412 U.S. at 440; *Barker* 407 U.S. at 522; *see also Goodrum*, 547 F.3d at 257 ("A violation of the speedy trial right, if found, requires dismissal of the indictment." (citing *Strunk*, 412 U.S. at 439–40)).

Yet the State contends that because the petitioner in *Barker* was charged with a single count, the Court did not consider whether a multi-count indictment, such as Berryman's, must be dismissed when a defendant has been denied his right to a speedy trial on one count, but not the other. The State further argues that the decision by the Mississippi appellate court is not inconsistent with the rule announced in *Barker* because it affirmed dismissal of the count for which there was a speedy trial violation.  Reprising

No. 23-60627

the state court's decision, the State emphasizes that *Barker* did not use the phrase the "entire indictment." This count-by-count approach to the remedy of dismissal, the State contends, comports with the functional method that *Barker* requires for analyzing speedy trial claims.

As to whether *Barker* was decided with multiple counts in mind, we note that *Barker* held that the remedy for a speedy trial right violation is dismissal of the indictment—not the count or charge. And as a charging instrument, an indictment may include multiple counts. The State's argument thus boils down to the fact that the indictments in *Barker* and *Strunk* are not identical. But § 2554(d)(1) does not demand an exact factual match in order for a state court decision to constitute an unreasonable application of a Supreme Court decision. *See White*, 572 U.S. at 427 (holding that § 2254(d)(1) does not "require[] an identical factual pattern before a legal rule must be applied" (citation modified)). The relevant question is whether, even on slightly different facts, there could be no fairminded disagreement. *See id.*

We find that there could be no fairminded disagreement as to whether *Barker* applies to multi-count indictments as well as single-count indictments for two reasons.

First, *Barker* instructed courts seeking to apply its holding to consult *Mann*, wherein a court dismissed a multi-count indictment after finding that the defendant's speedy trial right had been violated. In *Barker*'s wake, our court heeded this instruction and granted habeas relief after applying *Barker* to a multi-count-indictment case. *See Prince v. State of Ala.*, 507 F.2d 693, 701 n.5 (5th Cir. 1975). In the same vein, Supreme Court decisions distilling *Barker*'s rule regarding the remedy do not recognize it as providing for the dismissal of an individual count or charge. *See, e.g.*, *Betterman v. Mont.*, 578 U.S. 437, 444 (2016) ("The sole remedy for a violation of the speedy trial

No. 23-60627

right—dismissal of the *charges*—fits the preconviction focus of the Clause." (citation modified)); *id.* at 445 n.6 ("We have not read the Speedy Trial Clause . . . to call for a flexible or tailored remedy. Instead, we have held that violation of the right demands termination of the *prosecution.*") (emphasis added); *United States v. Loud Hawk*, 474 U.S. 302, 317 (1986) (applying *Barker* to a multi-defendant, multi-count-indictment case to conclude that the delay asserted by the defendants "do not justify the severe remedy of dismissing *the indictment.*") (emphasis added).

Second, and perhaps most prohibitive to our finding that the state court was reasonable in declining to dismiss the indictment, is the inflexible nature of the remedy of dismissal. The State hangs its hat on *Barker*'s endorsement of flexibility for assessing speedy trial claims, but this conflates the method for discerning whether the speedy trial right has been violated with the remedy for a violation of that right. The Supreme Court clarified in *Strunk*, that *Barker* set forth a process for discerning a speedy trial violation that was distinct from the remedy for such a violation. And unlike the balancing test for determining a violation of the speedy trial right, which "demand[s] a substantial element of judgment,"[2] the remedy of dismissal of the indictment is a specific legal rule. *Yarborough*, 541 U.S. at 664. The Supreme Court reversed the Seventh Circuit in *Strunk* for failure to provide the "only possible remedy" of dismissing the indictment, *Strunk*, 412 U.S. at 440 (quoting Barker, 407 U.S. at 522), demonstrating that courts applying *Barker* have "less leeway . . . in reaching outcomes in case-by-case determinations" when deciding on the remedy for a speedy trial violation, *Yarborough*, 541 U.S. at 664. Thus, it was not within the realm of fairminded

---

[2] We have previously acknowledged that our ability to grant habeas relief based on a state court's application of the balancing test is limited, given the test's malleable nature. *See Goodrum*, 547 F.3d at 257.

16

No. 23-60627

disagreement to decline to dismiss the indictment upon finding that Berryman's speedy trial right had been deprived. *See Strunk*, 412 U.S. at 440 (holding that the indictment must be dismissed "[g]iven the unchallenged determination that petitioner was denied a speedy trial").

Because *Barker*'s flexibility license stops at the remedy, when the balancing test reveals a speedy trial violation, the indictment must be dismissed. *See id.* This the state court did not do.

\* \* \*

It was an unreasonable application of *Barker* and its progeny for the state court, upon finding a speedy trial violation, to dismiss one count, rather than the indictment. Berryman is therefore entitled to relief.

## IV

As an alternative to his arguments challenging the state court's chosen remedy for the violation of his speedy trial claim, Berryman argues that the court's application of the *Barker* factors to the remaining count of the indictment was unreasonable. In view of the foregoing discussion, we decline to reach this argument.[3]

## V

The district court's judgment is REVERSED, and this case is REMANDED with instructions to grant Berryman's petition for a writ of habeas corpus and to take any further appropriate action.

---

[3] Even if we had not determined that Berryman was entitled to relief, we lack jurisdiction to consider this alternative argument because it is beyond the scope of the COA. *See Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997).

No. 23-60627

Irma Carrillo Ramirez, *Circuit Judge*, dissenting:

The Supreme Court has held that "dismissal of the indictment" is "the only possible remedy" for a speedy trial violation in the context of a *one-count* indictment. It has never considered whether dismissal of the entire indictment is the only remedy for a speedy trial violation as to only one count of a *multi-count* indictment. Because Berryman has not shown that the state appellate court's decision affirming his conviction was "contrary to, or involved an unreasonable application of, clearly established Federal law" under 28 U.S.C. § 2254(d)(1), I respectfully dissent.

I

"The threshold question under" § 2254(d)(1) is whether Berryman "seeks to apply a rule of law that was clearly established" when his "conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000).[1] Federal courts have an "independent" obligation to determine whether a particular rule of law is "clearly established." *Id.* at 382 (internal quotation marks omitted).

Although the Antiterrorism and Effective Death Penalty Act (AEDPA) does not define "clearly established Federal law," the Supreme Court has clarified that it consists only of the "'governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'" *Poree v. Collins*, 866 F.3d 235, 246 (5th Cir. 2017) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003)). "A legal principle is 'clearly established' . . . when it is embodied in a holding of [the Supreme Court]."

---

[1] Whether the law should, or does in fact, require dismissal of the entire indictment for a speedy trial violation on only one count of a multi-count indictment is a different question than whether that rule is clearly established. Under § 2254(d)(1), we may consider only the latter question.

No. 23-60627

*Thaler v. Haynes*, 559 U.S. 43, 47 (2010). The term "refers to holdings, as opposed to dicta." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). A rule that is "'dictated by precedent existing at the time the defendant's conviction became final'" is "clearly established." *Williams*, 529 U.S. at 381 (quoting *Teague v. Lane*, 489 U.S. 288, 301 (1989)). "A rule that 'breaks new ground'" is not. *Id.* (quoting *Teague*, 489 U.S. at 301) (internal citation omitted). "If [the Supreme Court] has not broken sufficient legal ground to establish an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar." *Id.*

Though "rules of law may be sufficiently clear for habeas purposes even when they are expressed in terms of a generalized standard rather than as a bright-line rule," *Williams*, 529 U.S. at 382, two firmly-rooted limiting principles exist. First, "holdings that speak only at a high level of generality" "cannot supply a ground for relief" under § 2254(d)(1). *Brown v. Davenport*, 596 U.S. 118, 136 (2022). The Supreme Court has repeatedly warned courts to refrain from "'framing [its] precedents at [too] high a level of generality.'" *Lopez v. Smith*, 574 U.S. 1, 6 (2014) (per curiam) (quoting *Nevada v. Jackson*, 569 U.S. 505, 512 (2013) (per curiam)); *see also Woods v. Donald*, 575 U.S. 312, 318 (2015) (reversing grant of habeas relief and stating that the court "framed the issue at too high a level of generality" where no Supreme Court precedent "confront[ed] 'the specific question presented by th[e] case'" (quoting *Lopez*, 574 U.S. at 6)). This is because, "[b]y framing [Supreme Court] precedents at such a high level of generality, a lower federal court could transform even the most imaginative extension of existing case law into 'clearly established Federal law, as determined by the Supreme Court.'" *Jackson*, 569 U.S. at 512 (quoting § 2254(d)(1)). Second, in discerning whether a legal rule is "clearly established," courts must ask whether

No. 23-60627

precedent "establish[es] clearly *the specific rule* [the habeas petitioner] needs" to obtain relief. *Lopez*, 574 U.S. at 6 (emphasis added).

A

Berryman argues that *Barker v. Wingo*, 407 U.S. 514 (1972) and *Strunk v. United States*, 412 U.S. 434 (1973) "clearly establish" that a speedy trial violation always requires dismissal of the entire indictment.

Berryman is correct that *Barker* and *Strunk*—the undisputed controlling authorities—hold that "dismissal of the indictment" is the "only possible remedy" for a speedy trial violation. *Barker*, 407 U.S. at 522; *Strunk*, 412 U.S. at 440. But both cases did so in the context of *single-count* indictments. *Barker*, 507 U.S. at 517, 518–19; *Strunk*, 412 U.S. at 435. In each case, dismissal of "the indictment" was tantamount to dismissal of all the charges in the indictment. Describing the remedy as "dismissal of the indictment" (a charging instrument)—rather than "dismissal of the charge(s)" (a part of that instrument)—does not necessarily mean that, for purposes of § 2254(d)(1), *Barker* and *Strunk* mandate an all-or-nothing remedy in the context of multi-count indictments. Because neither *Barker* nor *Strunk* "confronted 'the specific question presented by this case,'" Berryman's argument frames them at too high a level of generality. *See Woods*, 575 U.S. at 318 (quoting *Lopez*, 574 U.S. at 6). And out of respect for the context in which the Supreme Court pronounces a holding, "the language of an opinion is not always to be parsed as though we were dealing with the language of the statute." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 341 (1979); *Brown*, 596 U.S. at 141 (applying *Reiter* to explain that *stare decisis* requires courts to recall that "respect for past judgments . . . means respecting their limits"). *Barker* and *Strunk* do not "dictate" Berryman's "asked-for constitutional principle." *See Williams*, 529 U.S. at 381. For these

No. 23-60627

reasons, *Barker* and *Strunk* do not "establish clearly *the specific legal rule* [Berryman] needs" to obtain relief. *Lopez*, 574 U.S. at 6 (emphasis added).

By arguing that the state court "unreasonably failed to extend *Barker* and *Strunk* to the multi-count indictment context," Berryman tacitly concedes that he seeks to extend the rule they pronounce. But even if we must extend the scope of *Barker* and *Strunk*'s rule, the law is not "clearly established" in his favor. *See White v. Woodall*, 572 U.S. 415, 426 (2014) ("[I]f a habeas court must extend a rationale before it can apply to the facts at hand, then by definition, the rationale was not clearly established at the time of the state-court decision." (internal quotation marks omitted)). Berryman's "specific" "asked-for constitutional principle" "breaks new ground," because it is not "dictated" by *Barker* and *Strunk*'s specific holdings. *See Lopez*, 574 U.S. at 6; *Williams*, 529 U.S. at 381. It is not clearly established. *See Williams*, 529 U.S. at 381.

B

In support of his "asked-for constitutional principle," *see id.*, Berryman relies on the extreme language in *Barker* and *Strunk*. He argues that because *Barker* and *Strunk* contemplate "only" a "severe" remedy, and dismissal of an entire indictment is the most severe remedy, the law mandates complete dismissal. *Barker*, 407 U.S. at 522 (stating that the "only possible remedy" for a speedy-trial violation is "the unsatisfactorily severe remedy of dismissal of the indictment"); *Strunk*, 412 U.S. at 440 (same).

The extreme language in *Barker* and *Strunk* is dicta. As noted, dicta does not define "clearly established" law under § 2254(d)(1). *See Carey*, 549 U.S. at 74.[2]

---

[2] Berryman also asks us to view analogous dicta from other cases (which do not consider the issue presented here) as controlling. *See United States v. Loud Hawk*, 474 U.S.

No. 23-60627

The footnote in *Barker* citing *United States v. Mann* is also dicta: "[f]or an example of how the speedy trial issue should be approached, see Judge Frankel's excellent opinion in *United States v. Mann*, 291 F. Supp. 268 (S.D.N.Y. 1968)." *Barker*, 407 U.S. at 533 n.36. Because *Barker* cited *Mann* with approval, and *Mann* dismissed an entire multi-count indictment due to a speedy trial violation, Berryman contends that *Barker* clearly established that dismissal of the entire indictment is the only remedy for a speedy trial violation, even in cases involving a multi-count indictment. Notably, the district court in *Mann* found a speedy trial violation as to *each* of the five counts in the indictment. *See Mann*, 291 F. Supp. at 269, 275. Nevertheless, the Supreme Court's citation to *Mann* in dicta to illustrate how to operationalize *Barker* does not transform *Mann* itself—a district court case never appealed—into binding "Federal law, as determined by the Supreme Court" under § 2254(d)(1).

## C

Finally, Berryman claims that our prior decisions have "distilled the Supreme Court's precedent" to require dismissal of his indictment. He relies on *United States v. Gordon*, 93 F.4th 294, 306–07 (5th Cir. 2024) and *United States v. Cardona*, 302 F.3d 494, 499 (5th Cir. 2002), which involved multi-count indictments. In both cases, we stated that "the only remedy for a violation of the right [to a speedy trial] is dismissal of the indictment." *Gordon*, 93 F.4th at 307; *Cardona*, 302 F.3d at 499 ("Dismissal of the indictment is the only possible remedy.").[3]

---

302, 317 (1986); *Betterman v. Montana*, 578 U.S. 437, 444, 445 n.6 (2016); *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 269–70 (1982). This, we cannot do. *See Carey*, 549 U.S. at 74.

[3] Berryman also cited *United States v. Jones*, 56 F.3d 581 (5th Cir. 1995) and *United States v. Neal*, 27 F.3d 1035 (5th Cir. 1994) for similar propositions.

No. 23-60627

Only the Supreme Court can define "clearly established" law under § 2254(d)(1); circuit precedent cannot warrant relief. *Parker v. Matthews*, 567 U.S. 37, 48 (2012) ("A [c]ircuit's reliance on its own precedents [cannot] be defended . . . on the ground that they merely reflect what has been 'clearly established' by [Supreme Court] cases.").[4]

For all of these reasons, Berryman does not "seek[] to apply a rule of law that [is] clearly established" and he is not entitled to relief. *See Williams*, 529 U.S. at 390. "AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law." *White*, 572 U.S. at 426 (internal quotation marks omitted). The district court did not err.

## II

Under *Williams*, the next step is to determine whether the state court's decision was "contrary to, or involved an unreasonable application of," *Barker* and *Strunk*. *See Williams*, 529 U.S. at 379. This standard is "intentionally 'difficult to meet.'" *Woods*, 575 U.S. at 316 (quoting *White*, 572 U.S. at 419); *Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("If this standard is difficult to meet, that is because it was meant to be.").

## A

A decision is "contrary to" clearly established law only "if it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if it resolves a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Langley v. Prince*, 926 F.3d 145, 155 (5th Cir. 2019) (en banc) (internal quotation marks omitted). The "state-court

---

[4] Even if circuit precedent could warrant relief, none of the cases Berryman cites involved a speedy trial violation on only one count of the multi-count indictment.

No. 23-60627

judgment[] must be upheld unless, after the closest examination of the state-court judgment, a federal court is *firmly* convinced that a federal constitutional right has been violated." *Williams*, 529 U.S. at 389 (emphasis added). I am not.

Because the Supreme Court has never considered whether dismissal of the entire indictment is the only remedy for a speedy trial violation as to only some counts of a multi-count indictment—nor has it resolved a case differently on "materially indistinguishable" facts—the state court's decision was not "contrary to" clearly established law. *See id.*; *Langley*, 926 F.3d at 155. The district court was correct. *See Woods*, 575 U.S. at 317 ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from [the Supreme] Court." (quoting *Lopez*, 574 U.S. at 6)). Any other conclusion would dilute the high standard set forth in § 2254(d)(1)'s "contrary to" clause. *See Russell v. Denmark*, 68 F.4th 252, 265 (5th Cir. 2023) ("This is such a high bar that 'in most AEDPA cases, the 'contrary to' prong does not apply.'" (quoting *Williams*, 529 U.S. at 413)).

B

Neither has Berryman shown that the state court's decision "involved an unreasonable application of" *Barker* and *Strunk*. To prevail, he must establish that "there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 572 U.S. at 420. "The key inquiry is whether there is any room for principled judicial disagreement." *Sanchez v. Davis*, 936 F.3d 300, 304 (5th Cir. 2019) (citation modified).

As the state appellate court's split en banc opinion, the district court's order, and our split panel decision demonstrate, here, there is "room for principled judicial disagreement." *See id.* Berryman has not made the

24

No. 23-60627

showing required under *White*. *See* 572 U.S. at 420. The federal district court did not err in denying him relief.

*

Because the district court dutifully applied § 2254(d)(1), I respectfully dissent.