No. 23-60627

———————————————————

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

————————————————

BRIAN SCOTT BERRYMAN,
*Petitioner-Appellant,*

v.

BRAND HUFFMAN, SUPERINTENDENT,
*Respondent-Appellee.*

————————————————

On Appeal from the United States District Court
for the Northern District of Mississippi, No. 1:22-cv-00140-SA-RP

————————————————

**PETITIONER-APPELLANT'S OPPOSITION TO PETITION FOR REHEARING EN BANC**

Jenya Godina
O'MELVENY & MYERS LLP
1625 Eye St. NW
Washington, DC 20006
Tel.: (202) 383-5245

Jason Zarrow
O'MELVENY & MYERS LLP
400 S. Hope St., 18th Floor
Los Angeles, CA 90071
Tel.: (213) 430-8367

*Appointed Attorneys for Petitioner-Appellant Brian Scott Berryman*

## **CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Petitioner-Appellant
> Brian Scott Berryman
> *Represented by*
>> Jason Zarrow
>> Jenya Godina
>> O'Melveny & Myers LLP
>
> *Previously Represented by*
>> Mollie Marie McMillin
>> Office of Mississippi Public Defender
>> John White
>> Richard Bowen
>> Daniel Sparks
>> Will Bristow

Respondent-Appellee
> Brand Huffman, Superintendent/South Regional Warden, South Mississippi Correction Institution (SMCI)
> *Represented by*
>> Lynn Fitch, Attorney General
>> Scott G. Stewart, Solicitor General
>> Justin L. Matheny, Deputy Solicitor General
>> Anthony M. Shults, Deputy Solicitor General
>> Jerrolyn M. Owens, Special Assistant Attorney General
>> Mississippi Attorney General's Office

/s/ *Jenya Godina*
Jenya Godina

i

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................................i

INTRODUCTION ................................................................................................1

BACKGROUND ..................................................................................................3

REASONS TO DENY THE PETITION ..............................................................6

I.     The Panel Decision Is Correct. .....................................................................6

II.    The Panel Decision Does Not Implicate Questions Of "Exceptional
Public Importance." ...................................................................................13

CONCLUSION ..................................................................................................17

CERTIFICATE OF SERVICE ..........................................................................18

CERTIFICATE OF COMPLIANCE .................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barker v. Wingo*,
  407 U.S. 514 (1972)..................................................................................1, 8

*Berryman v. State*,
  337 So. 3d 1116 (Miss. Ct. App. 2021) ...................................... 3, 5, 6

*Betterman v. Montana*,
  578 U.S. 437 (2016).............................................................................. 10, 13

*Dickey v. Florida*,
  398 U.S. 30 (1970)....................................................................................8

*Drinkard v. Johnson*,
  97 F.3d 751 (5th Cir. 1996)..................................................................12

*Ex parte Lucio*,
  2022 WL 1211313 (Tex. Crim. App. Apr. 25, 2022).........................16

*Hawkins v. Alabama*,
  318 F.3d 1302 (11th Cir. 2003) ............................................................7

*Johnson v. State*,
  68 So. 3d 1239 (Miss. 2011)................................................................13

*Klopfer v. North Carolina*,
  386 U.S. 213 (1967)................................................................................15

*Lucio v. Lumpkin*,
  987 F.3d 451 (5th Cir. 2021) (en banc) ............................................16

*Panetti v. Quarterman*,
  551 U.S. 930 (2007)...............................................................................2, 7

*Strunk v. United States*,
  412 U.S. 434 (1973)............................................................... 1, 9, 10

*United States v. Fortna*,
  796 F.2d 724 (5th Cir. 1986)...............................................................12

*United States v. Mann*,
  291 F. Supp. 268 (S.D.N.Y. 1968)....................................... 1, 2, 8

*United States v. McClatchy*,
  249 F.3d 348 (5th Cir. 2001)...............................................................12

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*United States v. Washington*,
626 F. App'x 485 (5th Cir. 2015) ........................................................ 13

*United States v. Whitlock*,
698 F. App'x 220 (5th Cir. 2017) ........................................................ 13

*White v. Woodall*,
572 U.S. 415 (2014) .......................................................................... 2

*Williams v. Taylor*,
529 U.S. 362 (2000) .......................................................................... 12

*Yarborough v. Alvarado*,
541 U.S. 652 (2004) .......................................................................... 7

**Other Authorities**

5th Cir. R. 40 IOP ........................................................... 2, 3, 6, 16

5th Cir. R. 40.2.1 ........................................................................... 17

## <u>INTRODUCTION</u>

For all its alarmism, the State has little to say about how this case meets the standards for en banc review. That reticence is understandable. The panel's narrow decision, which will have virtually no impact beyond the confines of this case, does not come close to satisfying those standards.

In *Barker v. Wingo*, 407 U.S. 514 (1972), and *Strunk v. United States*, 412 U.S. 434 (1973), the Supreme Court held that the "severe remedy of dismissal of the indictment" is "the only possible remedy" when a prosecution involves a violation of the Sixth Amendment right to a speedy trial. *Barker*, 407 U.S. at 522; *see Strunk*, 412 U.S. at 439-40. The panel held that this rule applies here because this case involves facts that are materially the same as those contemplated by the Supreme Court when it pronounced the rule. And because this prosecution involved an unchallenged constitutional speedy-trial violation, yet the state court failed to afford Petitioner the remedy mandated by *Barker* and *Strunk*, habeas relief was warranted.

That outcome is hardly surprising, since the factual posture here—a speedy-trial violation in the context of a prosecution pursuant to a multicount indictment—is identical to that of a case used by the *Barker* Court itself as an "example" of how to apply its holding. *Barker*, 407 U.S. at 533 n.36 (citing *United States v. Mann*, 291 F. Supp. 268 (S.D.N.Y. 1968)). In *Mann*, the court conducted a holistic

analysis of prejudice to the defense as a whole, rather than engaging in a count-by-count parsing. 291 F. Supp. at 271-73. *Barker* thus makes clear on its face that the number of counts in an indictment is not a material fact for purposes of the Speedy Trial Clause. Whether a violation occurs in a case with a single-count indictment (as in *Barker*) or a multicount indictment (as in *Mann*), the same analysis applies, and the only remedy the Supreme Court's cases permit is dismissal of the indictment. The panel's decision was accordingly a straightforward application of settled precedents providing that AEDPA does not require an "identical factual pattern before a legal rule must be applied," so long as the facts do not differ materially from those before the Supreme Court when it announced the applicable clearly established law. *White v. Woodall*, 572 U.S. 415, 427 (2014) (quoting *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007)).

The State has not identified any decision of the "Supreme Court, Fifth Circuit or state law," 5th Cir. R. 40 IOP, that conflicts with this unremarkable disposition. Instead, it is left to contend that this case is one of "exceptional public importance." Not so. The panel's decision will have essentially no real-world impact because the rule it recognized can affect the outcome only in the vanishingly small category of cases where the *Barker* analysis would differ between counts. Indeed, the State has identified no post-*Barker* decision of any court that would have come out differently because of the panel's ruling. That

2

alone suffices to render en banc review unnecessary. The decision's broader impact—an essential ingredient of the State's justification for en banc review—is nonexistent.

Nor has the panel's carefully cabined ruling somehow broken AEDPA itself, as the State alternatively contends. The panel applied settled AEDPA precedents to the facts of this case. This Court's internal operating procedures expressly counsel against en banc review in these circumstances. *See* 5th Cir. R. 40 IOP ("Alleged errors in … the application of correct precedent to the facts of the case are generally matters for panel rehearing but *not for rehearing en banc*" (emphasis added)).

For these and the other reasons elaborated below, the Petition should be denied.

## **BACKGROUND**

To the extent there is anything "astonishing" about this case (Pet.12), it is the facts surrounding the delay endured by Petitioner. Petitioner was arrested following an altercation with a neighbor on February 6, 2017 and has remained incarcerated ever since. *Berryman v. State*, 337 So. 3d 1116, 1121 (Miss. Ct. App. 2021). Thus began what the trial court deemed a "comedy of issues," (Panel Decision ("Op.") at 3), but is better characterized as a tale of negligence, neglect, and disregard for Petitioner's constitutional right to a speedy trial.

3

The delays in Petitioner's case ultimately totaled 1,233 days. Op.3. Seven months passed before Petitioner was indicted on a two-count indictment charging him with one count of shooting into a dwelling and one count of unlawfully possessing a weapon as a felon. *Id.* The delays continued from there, with more than a year elapsing from indictment to arraignment, over two months from arraignment to first trial date setting, and a further delay of more than one year and five months until trial. Op.3-5. The reasons for delay are detailed in the panel's opinion and Petitioner's prior briefing and range from Petitioner's name being "negligently" left off the arraignment list, to an unexplained continuance filed by the State, to repeatedly being appointed attorneys who were disqualified from representing him, among others. *See id.*; ROA.432, 1335, 1942. All the while, Petitioner dutifully asserted his rights, filing five pro se motions and a mandamus petition demanding a speedy trial. Op.3-5. Indeed, the trial court later deemed the case "one of the most clearcut cases I've ever seen of the defendant asserting his right to a speedy trial." ROA.921.

In the meantime, Marshall Edge, an eyewitness who was essential to Petitioner's defense, died. Op.3. That left Petitioner without the benefit of Edge's testimony on the key pillars of his defense, including his necessity defense and his contention that the written "confession" statement bearing a signature that misspelled his own name had been falsely attributed to him. Op.5-6.

4

In June 2020, the trial court finally held a hearing on Petitioner's motions, at which Petitioner was represented by yet another new attorney appointed just days prior.  ROA.836-946, Op.5.  The court weighed the *Barker* factors and determined that Petitioner had established a speedy-trial violation as to Count 1.  Op.5.  With respect to Count 2, the felon-in-possession count, however, the court overlooked the value of Edge's testimony in connection with Petitioner's defenses, found that he was not prejudiced as to that count, and found no speedy-trial violation on that count only.  *Id.*  Notwithstanding Supreme Court precedent establishing that the only remedy for a speedy-trial violation in the course of a prosecution is dismissal of the indictment and expressly rejecting partial remedies, the trial court ordered a tailored remedy of its own creation: dismissal of Count 1 only.  *Id.*

The case at last proceeded to trial. Without the benefit of Edge's testimony, Petitioner was found guilty.  Op.6.  Pursuant to Mississippi's habitual offender statute, the court sentenced Petitioner to life in prison without the possibility of parole as a result of that conviction.  *Id.*

The Mississippi Court of Appeals affirmed.  *Berryman*, 337 So. 3d 1116. The State did not challenge the trial court's determination that Petitioner's speedy-trial right had been violated in the course of the prosecution.  *Id*. at 1124, 1134 & n.11.  Nevertheless, the majority upheld the trial court's tailored remedy.  *Id.* at 1133.  Judge McCarty dissented, reasoning that "clearly established constitutional

law," including decisions of the U.S. Supreme Court, "compel[led] the dismissal of the entire indictment when a trial court finds that the right to a speedy trial was violated on a count within the indictment." *Id*. at 1139-40 (McCarty, J., dissenting).

Petitioner exhausted state remedies and filed a habeas petition in the U.S. District Court for the Northern District of Mississippi. The court denied relief but issued a COA as to whether clearly established federal law required dismissal of the entire indictment. ROA.310. A panel of this Court reversed, determining that the holdings of *Barker* and *Strunk* clearly established that dismissal of the entire indictment was required. Judge Ramirez dissented.

<u>**REASONS TO DENY THE PETITION**</u>

The State gestures toward the need to "maintain uniformity of decision" (Pet.ii), but nowhere identifies any "direct conflict[]" between the panel decision and "prior Supreme Court, Fifth Circuit or state law precedent." 5th Cir. R. 40 IOP. The State's only remaining avenue to justify en banc review is to establish that the decision involves "an error of exceptional public importance." *Id*. The State fails to make that showing.

**I.      The Panel Decision Is Correct.**

The Petition's effort to demonstrate "an error of exceptional public importance" falters at the threshold: the State fails to identify any error at all. The

panel decision correctly determined that the facts presented here do not differ in a

relevant sense from those before the Supreme Court in *Barker* and *Strunk*, such

that the remedial rule announced in those cases applies with full force to this case.

A.  AEDPA does not "prohibit a federal court from finding an application of

a principle unreasonable when it involves a set of facts different from those of the

case in which the principle was announced." *Panetti*, 551 U.S. at 953 (quotation

omitted); *see Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004) ("Certain

principles are fundamental enough that when new factual permutations arise, the

necessity to apply the earlier rule will be beyond doubt").  AEDPA accordingly

authorizes habeas relief when state courts fail "to apply the *ratio decidendi* of

Supreme Court decisions fully and completely (and not in some crabbed way) so

that the rule of law covers new and different facts and circumstances as long as the

new facts and circumstances—objectively reasonably viewed—are materially or,

put differently, substantially the same that were in the mind of the Supreme Court

when it laid down the rule." *Hawkins v. Alabama*, 318 F.3d 1302, 1306 n.3 (11th

Cir. 2003).

Because the Supreme Court is not obliged to specify every factual

configuration to which its rules are applicable, it is irrelevant that, as the State

emphasizes, the Court has not "*explicitly*" stated that its dismissal-of-the-

indictment rule applies to cases involving multicount indictments.  Pet.7 (emphasis

added).  To take but one example, the Court had no need to expressly specify that

the *Barker/Strunk* rule applies to prosecutions initiated by information, rather than

indictment.  The rule governs in such cases by its own force, which is why the

Supreme Court later applied the *Barker/Strunk* rule in a case charged by

information without comment.  *See Dickey v. Florida*, 398 U.S. 30, 38 (1970)

(directing "the dismissal of any proceedings arising out of the charges on which

th[e] judgment was based").

The same is true of the rule's application to cases involving multicount

indictments.  The Supreme Court confirmed as much in *Barker* itself, when it

upheld as "an example of how the speedy trial issue should be approached" the

"excellent opinion" in *Mann.  Barker*, 407 U.S. at 533 n.36.  In *Mann*, the

defendant "was charged in a five-count indictment" for tax evasion relating to

three different companies.  *Mann*, 291 F. Supp. 268 at 269, 271.  The court did not

rest on a presumption of prejudice, instead examining the defendant's "specific

claims of prejudice" based on the death of multiple witnesses, combined with the

defendant's own fading memory.  *Id.* at 271-73.  The court explained how the loss

of those witnesses prejudiced the defense in connection with two out of the three

companies at issue, weighed the prejudice factor in his favor, and ultimately

ordered dismissal of the entire indictment.  *Id.* at 273.  Thus, notwithstanding that

the witness deaths were irrelevant to the allegations regarding one of the three

companies and therefore necessarily did not affect the defense on all charges, the *Mann* court did not parse prejudice—or the remedy—on a count-by-count basis, instead engaging in a holistic inquiry that would be the same in a single-count indictment case as it would in a multicount indictment case.

The Court's endorsement of *Mann* forecloses the possibility that the multicount indictment context differs from the single-count indictment context to a degree that justifies carving out an exception from the Court's "dismissal of the indictment" rule. This case is indistinguishable from *Mann*: Petitioner was indicted on a multicount indictment, and his defense was prejudiced by the death of a witness that no one disputes was material to at least one of the charges against him. It was accordingly within the Supreme Court's contemplation when it pronounced in *Barker* that dismissal of the indictment is the only possible speedy-trial remedy that this rule would require the dismissal of an indictment like the one at issue here.

*Strunk* confirms the point. In *Strunk*, the circuit court had "fashioned a remedy to cure the only prejudice that was claimed" by the defendant in that case. Br. of United States, *Strunk v. United States*, 1973 WL 172346, at *17 (U.S. Apr. 9, 1973). The Supreme Court rejected that approach, making clear that the speedy-trial remedy is not "flexible" and reaffirming that "dismissal of an indictment" is "the only possible remedy." *Strunk*, 412 U.S. at 438-40 (quotation omitted). The

9

basis for the Court's holding was that "the policies which underlie the right to a speedy trial," which encompass both private and "public interest[s]," cannot be vindicated by a remedy addressed at anything less than the entire prosecution. *Id.* at 439-40 & n.2. The circuit court's approach, which had carved up the speedy-trial right and deemed it violated only as that portion of the prosecution that caused prejudice to the defendant's private interests, was invalid. *Id.* at 440. *Strunk* thus confirms that the speedy-trial right is a single, indivisible right that can be violated and remedied only at the level of the prosecution as a whole. That principle forecloses an approach that would splinter the singular right to a "speedy trial" into multiple rights to be "speedily prosecuted on each count," as the State urges. *See Betterman v. Montana*, 578 U.S. 437, 444-45 & n.6 (2016) (describing "dismissal of the *charges*" as the "sole remedy for a violation of the speedy trial right" and making clear that "violation of the right demands *termination of the prosecution*" (emphases added)).

For these reasons, there is no material difference between single-count and multicount indictment cases for purposes of the speedy-trial analysis, such that the general *Barker/Strunk* rule—that dismissal of the indictment is the only possible speedy-trial remedy—applies to multicount indictments. The state court's failure to apply that rule here contravened clearly established law, as the panel correctly concluded.

B.  The State invokes a series of hypotheticals supposedly illustrating the flaws in the panel's decision, but each misses the mark.  As to the dismissal of an entire indictment where the "State violates the defendant's speedy-trial right on only 1 count in a 30-count indictment" (Pet.11), the State proceeds from a false premise.  As just explained, Supreme Court precedent establishes that the speedy-trial right can be violated or not violated only as to a prosecution as a whole.  The notion of a "speedy-trial violation" on "only one count" is a fiction, and there is no windfall when a defendant whose right to a speedy trial is violated during his prosecution is afforded the remedy that the Supreme Court has prescribed for that circumstance.

The State's two other hypotheticals—involving multi-defendant indictments or two separate indictments against a single defendant (*id.*)—are not implicated by the panel decision.  The panel's narrow ruling is that a case in which a speedy-trial violation transpired during a prosecution against a single defendant on a multicount indictment—the same situation as in *Mann*—is not materially different from cases involving speedy-trial violations in prosecutions pursuant to a single-count indictment, such that the *Barker/Strunk* remedial rule applies.  That holding says nothing about whether the distinct scenarios posited by the State are or are not

materially different from the fact pattern in *Barker* and *Strunk* so as to justify a different rule.[1]

C.  Finally, there is no merit in the State's suggestion that the mere existence of contrary opinions by state court judges and a dissenting opinion from a judge of this Court alone constitutes the "fairminded disagreement" that bars AEDPA relief. *See* Pet.10.  Such a standard would foreclose essentially all relief under 28 U.S.C. § 2254(d), which by definition requires setting aside a decision rendered by multiple judges.  Little wonder, then, that the Supreme Court has repudiated this approach, refusing to "transform the [habeas] inquiry into a subjective one by resting [the] determination … on the simple fact that at least one of the Nation's jurists has applied the relevant federal law in the same manner the state court did in the habeas petitioner's case." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). Indeed, the Supreme Court expressly disapproved of a decision of this Court to the extent it adopted the approach urged by the State here.  *See id.* (disapproving of *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)).

---

[1] There is ample reason to conclude that a multi-defendant indictment presents a materially different circumstance. *See United States v. Fortna*, 796 F.2d 724, 732 (5th Cir. 1986) ("Sixth Amendment rights … are personal in nature and cannot be asserted vicariously"); *United States v. McClatchy*, 249 F.3d 348, 356 (5th Cir. 2001) (The "fate of other participants [in a multi-defendant trial] is irrelevant" when one defendant is "punishable for their criminal conduct." (quotation omitted)).

## II.     The Panel Decision Does Not Implicate Questions Of "Exceptional Public Importance."

The State's Petition lacks merit for another reason:  even if the panel had erred, the error would not be one of "exceptional public importance" justifying en banc review.

A.  The real-world impact of the panel's decision is negligible.  As an initial matter, the remedial principle recognized by the panel could theoretically be implicated only in the small category cases where the rigorous criteria for establishing a constitutional speedy-trial violation are satisfied.  That is in and of itself rare.  As the Supreme Court has observed, the "provisions of the Speedy Trial Act have mooted much litigation about the requirements of the Speedy Trial Clause." *Betterman*, 578 U.S. at 445 (quotation omitted).  In the last fifteen years, this Court has found a Sixth Amendment speedy-trial violation in only a single case. *See United States v. Whitlock*, 698 F. App'x 220, 222 (5th Cir. 2017) (dismissing multicount indictment).[2]  The Mississippi Supreme Court, for its part, has not found a Sixth Amendment speedy-trial violation in a single case since 1992. *See Johnson v. State*, 68 So. 3d 1239, 1248-49 (Miss. 2011) (Dickinson, J.,

---

[2] The Court also found a speedy-sentencing violation, *see United States v. Washington*, 626 F. App'x 485 (5th Cir. 2015), but the Supreme Court thereafter clarified that the Speedy Trial Clause does not apply in that context, *see Betterman*, 578 U.S. at 439.

dissenting) (reporting on this trend nearly fifteen years ago and observing that, as of that time, the court had decided "[f]ifty-eight cases in a row ... in favor of the State").

Within that already confined universe, the panel's application of the Speedy Trial Clause could conceivably matter to the outcome of only a vanishingly small subgroup of cases—namely, multi-count indictment cases where the *Barker* analysis (if conducted separately for each count, *but see supra* at 8-10) would differ between counts. So uncommon is this scenario that the State has not identified a single other real-world case that actually implicates this situation.[3]

In fact, properly understood, this very case does not even qualify. As Petitioner's panel briefing explained, the state courts' view that Petitioner did not establish prejudice as to Count 2 of the indictment was based on the application of an erroneously heightened corroboration and preservation standard, as well as a failure to grasp the value of Edge's testimony to Petitioner's necessity defense and Petitioner's effort to discredit the written statement that formed the centerpiece of the State's case at trial. Pet. Supp. Br. at 41-46, Pet. Supp. Reply Br. at 17-22. Absent those errors, the *Barker* weighing for each of the two counts would have been the same. That puts the total number of non-hypothetical cases identified by

---

[3] As explained, *Barker*'s citation to *Mann*, alongside the reasoning of *Strunk*, confirms that while that situation is not common, it is not exceptional in a manner that would justify declining to apply the general remedial rule.

the State in which the rule recognized by the panel meaningfully changes the outcome at zero. This case is accordingly the very antithesis of one that opens the floodgates to habeas claims or otherwise implicates an issue of exceptional public importance. Certainly, an issue that rarely, if ever, arises is not one that justifies empaneling every judge on this Court.

B. Trying another tack, the State accuses the panel decision of perpetrating a "miscarriage of justice." Pet.12. That an individual who suffered the deprivation of "one of the most basic rights preserved by our Constitution," *Klopfer v. North Carolina*, 386 U.S. 213, 226 (1967), was afforded the remedy for the violation of that right dictated by Supreme Court precedent can hardly be deemed a miscarriage of justice. That is all the more evident against the backdrop of the egregious delays in this case, which persisted notwithstanding Petitioner's dedicated assertion of his rights at every turn. *See supra* at 4. The State also overlooks that the panel's disposition is fully supported not only by its own reasoning, but also by a fact-bound, alternate ground that the panel declined to reach. *See* Pet. Supp. Br. at 40-55, Pet. Supp. Reply Br. at 16-28 (explaining that habeas relief is warranted on alternative ground that state appellate court's ultimate determination as to weighing of *Barker* factors on Count 2 was an unreasonable application of clearly established law). In any event, the State ignores that the practical effect of the grant of habeas relief is far from certain even within the confines of this case, since

15

Petitioner will be required to navigate other pending charges and parole proceedings once the unconstitutional prosecution at issue in this case is terminated.

C.   There is likewise no merit in the Petition's contention that the panel's decision will wreak havoc on this Court's AEDPA jurisprudence.  The panel applied settled precedents of this Court and the Supreme Court, *see supra* at 2, 7, in a manner that made no new AEDPA law and will not constrain any future panel considering a different AEDPA question.  While the State argues the panel *misapplied* established AEDPA precedent, that is no basis for en banc review: "[a]lleged errors in … the application of correct precedent to the facts of the case are generally matters for panel rehearing but *not for rehearing en banc*."  5th Cir. R. 40 IOP (emphasis added)).

\*     \*     \*

For these reasons, the "extraordinary procedure" of en banc review is not warranted.[4]  5th Cir. R. 40 IOP.  The Court's "limited judicial resources," 5th Cir.

---

[4] The State's reliance (Pet.13) on the reversal of habeas relief in *Lucio v. Lumpkin*, 987 F.3d 451 (5th Cir. 2021) (en banc), as an example of the value of en banc review of decisions granting habeas relief is questionable.  The Texas Court of Criminal Appeals ultimately stayed Ms. Lucio's execution two days before it was scheduled to take place, *Ex parte Lucio*, 2022 WL 1211313, at \*1 (Tex. Crim. App. Apr. 25, 2022), and the trial court subsequently ruled that Ms. Lucio is "actually innocent; she did not kill her daughter," *Ex parte Lucio*, No. 07-CR-00000885 ¶ 114 (138th Jud. Dist. Ct. of Cameron Cnty., Tex., Oct. 16, 2024).

R. 40.2.1, are best directed elsewhere—to a case with real-world impact that satisfies the requirements for en banc review.

## CONCLUSION

The petition should be denied.

Respectfully submitted,

November 10, 2025

/s/ *Jenya Godina*

Jenya Godina
O'MELVENY & MYERS LLP
1625 Eye St. NW
Washington, DC 20006
Tel.: (202) 383-5245

Jason Zarrow
O'MELVENY & MYERS LLP
400 S. Hope St., 18th Floor
Los Angeles, CA 90071
Tel.: (213) 430-8367

*Appointed Attorneys for Petitioner-Appellant Brian Scott Berryman*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 10, 2025, an electronic copy of the foregoing document was filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit and served on counsel for Respondent-Appellee using the appellate CM/ECF system.

/s/ *Jenya Godina*
Jenya Godina

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limit and the word limit of

Fed. R. App. P. 35(b)(2)(A) and Fed. R. App. 40(b)(1) because, excluding the parts

of the document exempted by Fed. R. App. P. 32(f), this document contains 3,896

words.

This document complies with the typeface requirements of Fed. R. App. P.

32 (a)(7)(B)(i) and Fed. R. App. P. 32(a)(5), and the type-style requirements of

Fed. R. App. P. 32(a)(6), because this document has been prepared in a

proportionally-spaced typeface using Microsoft Word in size 14 font in Times New

Roman.

/s/ *Jenya Godina*
Jenya Godina
*Appointed Counsel for*
*Petitioner-Appellant*
*Brian Scott Berryman*

Dated: November 10, 2025